RENDERED: OCTOBER 27, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0739-MR

JAMES ROBERT BURDEN, JR.                                     APPELLANT

v.
APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE LISA P. JONES, JUDGE
ACTION NO. 85-CR-00021

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: James Robert Burden, Jr. ("Burden") appeals the trial court's denial of his post-conviction motion seeking DNA testing pursuant to KRS[1] 422.285. We reverse the trial court's order and remand this matter back to the trial court.

---

[1] Kentucky Revised Statute.

## FACTS

In 1986, Burden entered a guilty plea in Daviess County to charges of the kidnapping and murder of Edith Curry. Ms. Curry had been working at a local convenience store in the early morning hours of January 30, 1983, when she disappeared, leaving her purse and coat in the store and her vehicle in the parking lot. Her body was found that afternoon. She was mostly naked with her clothing strewn about the area. It was determined she died of exposure and had suffered several blows to the head and had been sexually assaulted. Swabs and clippings were taken from her vaginal area. Other items were also collected at the scene which might have contained biological evidence, but at that time DNA testing was not widely available.

The authorities suspected Burden might have been involved in the death of Ms. Curry due to his prior criminal history. In a letter he sent from prison to his aunt, Burden had confessed to having killed his father. Further, Burden had been implicated along with two other men in the kidnapping and sexual assault of a young college student. *See Cooper v. Scroggy*, 845 F.2d 1385, 1386 (6th Cir. 1988).

Law enforcement questioned Burden and the two men involved in the prior kidnapping of the college student concerning the Curry murder. Burden claimed to have been at his grandmother's home all evening. He also alleged that

Cooper, one of the other men involved in the prior kidnapping, had appeared at Burden's grandmother's home late the night of the Curry murder in bloody clothing. Burden variously asserted that Cooper simply asked him for a ride home or that Cooper had requested his assistance in getting rid of Curry's body, telling Burden he had robbed the store where Curry worked. Finally, Burden claimed that he had accompanied Cooper to the store where Cooper grabbed the lady by the arm and forced her into the car. He claimed Cooper made him drive the car to an isolated area where Cooper raped her and made Burden assault her. According to Burden, Cooper killed Curry.

Several years after the murder, witnesses came forth who had been at the convenience store at the time and recalled seeing Cooper, Burden, and a third man at the store the night of the murder. Eventually, Burden entered a plea pursuant to *North Carolina v. Alford*[2] to the murder and kidnapping charge. The rape charge against him was dismissed.

After the entry of his plea, Burden sent letters to the court acknowledging his guilt. He also reportedly confessed to other inmates with whom he was housed. Burden claims the confessions were false and that threats from

---

[2] 400 U.S. 25 (1970). A defendant entering an *Alford* plea declines to acknowledge guilt but admits that the Commonwealth can present strong evidence of guilt.

Cooper, with whom he says he was housed within the same corrections facility, are the reason for these confessions.

Burden first sought relief from his conviction in 1993, alleging ineffective assistance of counsel.  He alleged counsel failed to litigate that the confession he gave police was coerced, failed to investigate defenses, and misadvised concerning the availability of an appeal from a sentence to which a guilty plea had been entered.  *See Burden v. Commonwealth*, No. 94-CA-1973-MR (Ky. App. Oct 15, 1995).  This Court denied relief, finding:

> Because Burden has failed to allege any error by counsel reasonably likely to have induced his guilty plea, and because he has failed to raise substantial doubt concerning the validity of that plea, we affirm the order of Daviess Circuit Court.

*Id.* at *6-7.

In 2021, Burden requested the Daviess Circuit Court order testing of the DNA evidence obtained from the scene of the Curry murder, which included vaginal swabs of Ms. Curry, a knee-high stocking found on her leg, a white blood-stained sheet, and a white tissue found inside the sheet.  Since the discovery of Ms. Curry's body, advances in the testing of biological evidence have led to the passing of KRS 422.285, which provides for DNA testing of previously untested evidence.

The Daviess Circuit Court denied the relief, finding that there was no "unresolved" issue which might be resolved by the testing of the evidence.  The

-4-

circuit court held that as the rape charge against Burden had been dismissed, it was resolved. Further, the court determined that the prior post-conviction litigation had led to the resolution of the question of the legitimacy of his confession. The court therefore concluded there was no reasonable likelihood the result of the matter would have been different had the evidence been tested, a requirement of the statute. We reverse the circuit court.

## STANDARD OF REVIEW

Denial of a motion to release evidence for DNA testing brought pursuant to KRS 422.285 is reviewed under an abuse of discretion standard. *Hodge v. Commonwealth*, 610 S.W.3d 227, 229 (Ky. 2020). The test for abuse of discretion is whether the trial court's decision was, "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). A trial court abuses its discretion, "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions" allowed by the correct application of facts to the law. *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (citations and emphasis omitted).

## ANALYSIS

At the outset, we must first point out Burden's failure to comply with RAP[3] 15. RAP 15(C) provides that when a brief filed in this Court is longer than the page limits for a computer-generated brief per RAP 31(G)(2), a word-count certificate must be included.[4] That rule requires that when a brief is generated by computer and the page count exceeds twenty (20) pages, a word-count certificate must be included to ensure that the brief does not exceed 8,750 words. Burden's brief was twenty-five (25) pages long and contained no word-count certificate, in violation of the Rule.

Because the Commonwealth did not object and due to the discrete nature of the claims forwarded, we will ignore the deficiencies in the brief and rule on the merits. *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).[5] We caution advocates to ensure they are aware of and implementing the new Rules of Appellate Procedure lest their pleadings be stricken.

---

[3] Kentucky Rules of Appellate Procedure.

[4] RAP 31(G)(2) ("Court of Appeals. (a) An appellant's initial brief and an appellee's response brief shall not exceed 8,750 words or 20 pages if computer generated and shall not exceed 25 pages if handwritten or typewritten.").

[5] "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Id.*

We turn now to the merits of the appeal. Generally, once a judgment has become final and the time for review has passed, the judgment cannot be re-opened or otherwise litigated. However, KRS 422.285 was enacted in 2002 in response to the scientific advances made in the analysis of DNA towards identifying the source of genetic materials. *Virgil v. Commonwealth*, 403 S.W.3d 577, 578-79 (Ky. App. 2013). Per the statute, upon motion by the person convicted of a serious felony offense, DNA testing either shall be ordered, or may be ordered, if there exists a reasonable probability that the results would be exculpatory. There is no limitation period in the statute, such that the motion could be filed at any time.

> Not only does the statute not include a limitation period, as most collateral attack procedures do, *see, e.g.*, RCr[6] 11.42 (requiring most filings within three years), the statute specifically says that a petition can be filed "[a]t any time" after conviction of and sentencing to death for a capital offense, KRS 422.285(a). This reflects a policy decision by the General Assembly to allow death row petitioners to seek DNA testing even at a late date. It is not clear that this – or any – court should act in chancery in direct contravention of a statutory mandate.

*Moore v. Commonwealth*, 357 S.W.3d 470, 494 (Ky. 2011), *as modified on denial of reh'g* (Nov. 23, 2011).

---

[6] Kentucky Rules of Criminal Procedure.

The statute as enacted at the time of the *Moore* decision in 2011 provided that only those who received a death sentence could seek DNA testing. In 2017, the statute was expanded to allow those convicted of Class A and B felonies and other violent offenses to request the relief. *Virgil*, 403 S.W.3d at 578.

The statute has both mandatory and discretionary application.[7] KRS 422.285 *requires* trial courts to grant motions for DNA testing when all factors under subsection (5) are met. Those factors are:

> (a) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if

---

[7] KRS 422.285(6) provides that the trial court enjoys discretion and *may* grant such a motion when:

(a) A reasonable probability exists that either:

> 1. The petitioner's verdict or sentence would have been more favorable if the results of DNA testing and analysis had been available at the trial leading to the judgment of conviction; or

> 2. DNA testing and analysis will produce exculpatory evidence;

(b) The evidence is still in existence and is in a condition that allows DNA testing and analysis to be conducted;

(c) The evidence was not previously subject to DNA testing and analysis or was not subjected to the testing and analysis that is now requested and that may resolve an issue not previously resolved by the previous testing and analysis;

(d) Except for a petitioner sentenced to death, the petitioner was convicted of the offense after a trial or after entering an Alford plea;

(e) Except for a petitioner sentenced to death, the testing is not sought for touch DNA, meaning casual or limited contact DNA; and

(f) The petitioner is still incarcerated or on probation, parole, or other form of correctional supervision, monitoring, or registration for the offense to which the DNA relates.

exculpatory results had been obtained through DNA testing and analysis;

(b) The evidence is still in existence and is in a condition that allows DNA testing and analysis to be conducted;

(c) The evidence was not previously subjected to DNA testing and analysis or was not subjected to the testing and analysis that is now requested and may resolve an issue not previously resolved by the previous testing and analysis;

(d) Except for a petitioner sentenced to death, the petitioner was convicted of the offense after a trial or after entering an Alford plea;

(e) Except for a petitioner sentenced to death, the testing is not sought for touch DNA, meaning casual or limited contact DNA; and

(f) The petitioner is still incarcerated or on probation, parole, or other form of correctional supervision, monitoring, or registration for the offense to which the DNA relates.

*Id.*

The statute, therefore, *requires* that a trial court grant the motion when "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and analysis[.]"  KRS 422.285(5)(a).  It only bestows discretion upon the trial court when "the petitioner's verdict or sentence would have been more favorable if the results of DNA testing and analysis had been available at the trial leading to the judgment of conviction; or [] DNA testing and analysis will produce

-9-

exculpatory evidence." KRS 422.285(6)(a)1.-2. Under our review we find the trial court was required under KRS 422.285(5) to grant the motion.

A significant part of the DNA evidence which Burden now seeks to be tested relates specifically to the rape of Ms. Curry, a crime for which Burden was initially charged and prosecuted. In determining whether it was a "reasonable probability" that Burden would not have been prosecuted for the rape with which he was charged had the DNA testing been available at the time, the court is required to assume that the testing would have resulted in exculpatory evidence. *Moore*, 357 S.W.3d at 495-96.

While it may be true that Burden was not convicted of rape, due to the plea agreement reached, he was still *prosecuted* for rape as he was indicted on the charge. The Commonwealth would have us ignore the rape *charge* and consider only those counts of which Burden was convicted. However, the plain language of the statute requires a different result. KRS 422.285(5) mandates that a "court **shall** order DNA testing and analysis if the court finds that all of the following apply . . . ." (Emphasis added.) The first phrase of KRS 422.285(5)(a) provides "[a] reasonable probability exists that the petitioner would not have been **prosecuted** or convicted . . . ." (Emphasis added.) We hold the statute is invoked when one is charged with a Class A or Class B felony. The statute clearly does not require a conviction of the charge.

Further, a plea deal was reached and allowed for the entry of an *Alford* plea, wherein Burden did not acknowledge his guilt, but simply acknowledged that the prosecution had arguably enough evidence to secure a conviction against him on the murder and kidnapping charges. The rape charge, though perhaps "resolved" by the plea, still would have been litigated had Burden not pleaded guilty.

It is quite likely Burden would not have pleaded guilty had there been exculpatory DNA evidence of his probable non-involvement in the sexual assault of Curry. Per *Moore*, we must assume, and the trial court was required to likewise assume, that the DNA evidence would have been exculpatory for the purposes of this motion. With that assumption, we find it highly likely that had the DNA results been available and exculpatory, Burden would not have pleaded guilty to the kidnapping and murder as he would have had evidence of non-involvement in the rape, which occurred contemporaneously with the kidnapping and murder.

The trial court erred in not granting the motion. And while not a requirement for consideration by the statute, this request for DNA testing, where it could potentially be highly inculpatory to the Defendant, if it is in fact exculpatory, could still be significantly beneficial to the Commonwealth as no one has been convicted for the rape of Ms. Curry. Regardless of how long ago this may have occurred, she is a victim deserving justice. We, like our Supreme Court in *Hardin*

*v. Commonwealth*, "[a]re mystified, if not amazed, that the Commonwealth has such little interest in the possibility that DNA testing might lead to the prosecution and conviction of a guilty person heretofore uncharged and now at large upon the Commonwealth." *Hardin v. Commonwealth*, 396 S.W.3d 909, 915 (Ky. 2013).

## CONCLUSION

The trial court erred in denying the motion pursuant to KRS 422.285(5). Given the reasonable probability of a different result had the DNA evidence been available at the time of the entry of the plea, we find that the trial court was required by KRS 422.285(5) to grant the motion. We remand this matter to the trial court for entry of an order granting the testing requested.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Miranda J. Hellman
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Christopher Henry
Frankfort, Kentucky